# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RISEANDSHINE CORPORATION d/b/a RISE BREWING | |
| Plaintiff, | Civ. Action No.: 1:21-cv-00232 |
| vs. | |
| JEFFREY HENDRICKS | |
| Defendant. | **(JURY DEMAND)** |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND CANCELLATION OF FEDERAL TRADEMARK REGISTRATION</u>

Plaintiff RiseandShine Corp. d/b/a Rise Brewing ("Plaintiff" or "Rise Brewing"), by their attorneys and for their Complaint against Defendant Jeffrey Hendricks ("Defendant" or "Hendricks"), alleges and states as follows:

## <u>NATURE OF THE ACTION</u>

1.     This is an action for a declaratory judgment of both non-infringement and abandonment of the registered trademark RIZE, and for cancellation of the same pursuant to 15 U.S.C. § 1119.

2.     Plaintiff Rise Brewing has been accused by Defendant Hendricks of infringing Hendricks' purported rights in the trademark RIZE for certain beverages. To the extent Hendrix ever owned such rights, they have now been abandoned as a matter of law, and his trademark registration for the RIZE mark should be cancelled. Moreover, on information and belief, Hendricks has committed a fraud on the U.S. Patent & Trademark Office, recently submitting

sworn declarations stating that the mark RIZE was presently being used in commerce in connection with the registered goods, when it was not.

## THE PARTIES

3.      Plaintiff Rise Brewing is a Delaware corporation with its principal place of business at 425 Fairfield Ave., Stamford, Connecticut, 06902. Rise Brewing is the owner of the RISE family of Marks (listed below) which are used to sell and promote its RISE canned coffee products.

4.      Defendant Jeffrey Hendricks is an individual who, upon information and belief, resides at 370 Hamilton Drive, Columbus, North Carolina 28722, which is in this judicial district.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1119-1121, and 28 U.S.C. §§ 1331, 1338 and 2201(a).

6.      This Court has jurisdiction under 28 U.S.C. § 2201(a) because there is an actual, substantial, and justiciable controversy between Plaintiff and Defendant concerning the non-infringement of Plaintiff's RISE Marks and RISE-branded products with respect to Defendant's '592 Registration.  For example, Hendricks has explicitly and intentionally accused Rise Brewing of infringing the mark disclosed in the '592 Registration and has threatened a lawsuit premised on that allegation seeking injunctive relief. *See* Exhibit 1.

7.      Because this is an action involving a registered mark, this Court also has jurisdiction pursuant to 15 U.S.C. § 1119 to "order the cancellation of registrations" such as the '592 Registration. *Id.*

8.      This Court further has jurisdiction under 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy is more than $75,000.

2

9.      This Court has personal jurisdiction over Hendricks because, upon information and belief, he resides in this district and regularly conducts business in this district.

10.     Venue in this District is proper under 28 U.S.C. § 1391 because, upon information and belief, Defendant Hendricks is domiciled and resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

**A. Plaintiff Rise Brewing and Its Success**

11.     Rise Brewing was founded in an East Village, New York apartment in 2014 by three childhood friends, Jarett McGovern, Grant Gyesky, and Justin Weinstein, along with their co-founder Hudson Gaines-Ross.  Having had enough of the chemical-laden, sugary, ready-to-drink coffee products on the store shelves, they sought to create something better, a new product that was responsibly sourced, environmentally friendly, and made from all organic ingredients.

12.     Rise Brewing's founders began experimenting with different beans and roasts. Rather than using traditional brewing techniques, they adopted a "nitro cold brew" process, which infuses nitrogen into the brewing process to give coffee a foamy, creamy texture, without the bitterness of typical drip coffees. Rise Brewing's first commercial product, available in large format kegs similar to those used for beer, was sold at a popular Brooklyn restaurant.  Patrons of that restaurant enjoyed the product immensely, and contacted Rise Brewing to ask it to make its product available at office buildings in New York.

13.     Almost immediately, Rise Brewing's founders saw the potential for a canned nitro cold brewed product. Given that the available canned coffee drinks were highly-sweetened ready-to-drink coffee drinks such as Starbucks Frappuccino®, Rise Brewing saw the need for a canned caffeine drink that did not have the chemicals, dairy, fat, and sugar associated with these available products.

3

14.     Rise Brewing began experimenting with nitrogen widgets, which are small plastic devices inside a can that store nitrogen.  As soon as you open the can, the widget releases bubbles, which rise to the top of the can or glass.  The widget creates the same cascade and smooth, creamy head that consumers enjoy from nitro cold brew coffee served on tap from a keg.

15.     Rise Brewing became the first brand in the United States to have a shelf-stable canned coffee product with a nitrogen widget that would require no refrigeration and thus enable easier transportation and storage of the product.

16.     Rise Brewing's founders did indeed fill a marketplace void, and its canned caffeine drinks were an instant success. Today, Rise Brewing sells tens of millions of dollars of its products, which can be found in grocery stores, convenience stores, and other big box and online retailers across the country.

17.     Rise Brewing's products have expanded from the original nitro cold brew, and today include several other canned caffeinated drinks, including an Earl Grey tea latte.  Rise Brewing's products have also included citrus coffee products, *i.e.*, a blood orange coffee and a lemonade coffee. A sampling of Rise Brewing's product offerings sold under its RISE family of Marks (discussed below) are depicted in the image below.

4



18.   Rise Brewing's marketing targets all consumers, but the company runs specific marketing campaigns focusing on the athletic and wellness community, advertising its drinks as a source of energy to drive athletic performance.  Given its specific focus on the athletic community, Rise Brewing has partnerships to promote its RISE-branded drinks with multiple Olympic sports teams, such as the USA Surf Team, USA Climb Team, and the US Ski & Snowboard Team.  RISE-branded drinks are also stocked in the locker rooms of several major New York-area professional sports teams, including the New York Yankees, the New York Mets, and the New York Giants, as well as in MMA (mixed martial arts) facilities.  Additionally, Rise Brewing was a sponsor of FOX Sports' 2020 college football season.

19.   In the years since its founding, Rise Brewing has been recognized with multiple awards for its drinks.  Rise Brewing's nitro cold brew received the 2017 Best New Product award from BevNET and a 2018 Beverage Innovation of the Year award from Beverage Industry, two leading trade magazines. Rise Brewing also won a 2018 NEXTY Best New Organic Beverage award, administered by New Hope Network, a natural foods association.  And in 2019, Rise

Brewing was awarded People Magazine's Best Canned Coffee award for its canned nitro cold brew.

20.     As demonstrated in part by these awards, Rise Brewing has invested considerable time and expense in marketing and ensuring that its branding is recognizable to consumers.  It set out and achieved its mission to create a delicious, healthy caffeine drink, using all organic ingredients, and its brand has risen in popularity and renown since its humble beginnings.

21.     Rise Brewing owns multiple valid registered trademarks, which are registered with the United States Patent and Trademark Office ("USPTO"), as shown in the chart below (together with RISE's common law rights in these and other RISE-formative marks, these registered marks are referred to collectively herein as the "RISE Marks").  Copies of the registrations and status pages from the USPTO are attached as Exhibit 2.

| Mark | Registration No. & Registration Date | Goods and Services |
|---|---|---|
| RISE BREWING CO. ("BREWING CO." disclaimed) | 5,168,377 March 21, 2017 | **Class 30:** Coffee; coffee; coffee and coffee substitutes; coffee and artificial coffee; coffee and tea; coffee based beverages; coffee beverages with milk; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; green coffee; iced coffee; prepared coffee and coffee-based beverages; unroasted coffee. |

| Mark | Registration No. & Registration Date | Goods and Services |
|------|--------------------------------------|--------------------|
|  RISE BREWING CO. ("BREWING CO." disclaimed) | 5,333,635 November 14, 2017 | **Class 30:** Coffee; Coffee; Coffee and coffee substitutes; Coffee and artificial coffee; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee capsules containing coffee for brewing; Coffee essences; Coffee extracts; Coffee pods; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Green coffee; Iced coffee; Prepared coffee and coffee-based beverages; Unroasted coffee. **Class 31:** Unprocessed coffee **Class 43:** Coffee bars; Coffee shops |
|  RISE NITRO BREWING CO. ("NITRO BREWING CO." disclaimed) | 6,140,084 September 1, 2020 | **Class 30**: Coffee; Coffee and coffee substitutes; Coffee based beverages; Coffee beans; Coffee extracts; Coffee pods; Coffee, tea, cocoa and artificial coffee; Caffeine-free coffee; Green coffee; Iced coffee |
| RISE NITRO ("NITRO" disclaimed) | 5,188,284 April 18, 2017 | **Class 30**: Coffee; Coffee; Coffee and coffee substitutes; Coffee and artificial coffee; Coffee and tea; Coffee based beverages; Coffee beverages with milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Iced coffee; Prepared coffee and coffee-based beverages |
| RISE & GRIND | 4,396,118 September 3, 2013 | **Class 43**: Cafe services; Coffee shops |

| Mark | Registration No. & Registration Date | Goods and Services |
|---|---|---|
| RISE MAKES YOU SHINE | 6,007,308 March 10, 2020 | **Class 30**: Coffee and coffee substitutes; Tea; Coffee based beverages<br><br>**Class 35**: Retail store services featuring Coffee and coffee substitutes; coffee-based beverages; tea.; On-line retail store services featuring Coffee and coffee substitutes; coffee-based beverages; tea |
| RISE-N-SHINE BLEND ("BLEND" disclaimed) | 3,253,782 June 19, 2007 | **Class 30**: Coffee |

22.     Rise Brewing's registrations are valid, subsisting, and in full force and effect.

23.     Notably, two of Rise Brewing's federal registrations—U.S. Reg. No. 4,396,118 for RISE & GRIND and U.S. Reg. No. 3,253,782 for RISE-N-SHINE BLEND—predate Defendant Hendricks' stated first use date for the RIZE mark set forth in the '592 Registration by several years.

24.     For many years, Rise Brewing has prominently used and promoted its RISE Marks through extensive advertising, marketing, and sale of goods bearing the marks.  As a result of this adoption, continuous use, and heavy promotion of the RISE Marks, the RISE Marks have become invaluable assets of Rise Brewing, serving as a symbol of the quality goods provided by Rise Brewing.

25.     Rise Brewing also owns common law rights in a number of RISE-formative marks, including RISE, RISE COFFEE CO., RISE NITRO BREWING CO., HOW I RISE, ON THE RISE, RISE BREWING, and a stylized RISE NITRO BREWING CO. design, as depicted on cans of Rise Brewing's canned caffeine drinks, below.  Rise Brewing has used each of these RISE-formative marks in connection with its canned caffeine drinks.



26.     As noted in the chart above, the wording "BREWING CO." and "NITRO" has been disclaimed in Rise Brewing's federal registrations, indicating that RISE is the prominent, distinctive portion of the registered RISE Marks. RISE is similarly the formative portion of the common law RISE-formative marks RISE COFFEE CO., RISE NITRO BREWING CO., and the stylized RISE NITRO BREWING CO. design.

27.     Recently, Rise Brewing's success caught the attention of beverage giant PepsiCo, Inc. ("PepsiCo").   Acknowledging Rise Brewing's success with its RISE-branded products, PepsiCo sought out and held a meeting with Rise Brewing to discuss a potential partnership opportunity. No fewer than five meetings followed. Despite ultimately not partnering with Rise Brewing, PepsiCo decided to adopt Rise Brewing's RISE brand anyway and introduce its own RISE-branded caffeine drink.  PepsiCo's unlawful conduct is the subject of litigation brought by Rise Brewing that is currently pending in the Southern District of New York.

**B. Defendant Hendricks and His Failed RIZE Dietary Supplement Beverages.**

28.     Defendant Hendricks filed for and received a U.S. trademark registration for the word mark "RIZE" for "[n]on-alcoholic beverages, namely, carbonated beverages." U.S. Trademark Registration No. 4714592 (the "'592 Registration").   For a time, it appears that

Hendricks attempted, unsuccessfully, to gain traction in the marketplace for his apple pear and citrus mango flavored dietary supplement beverages. However, upon information and belief, Hendricks no longer sells any beverage bearing a "RIZE" mark and has not for some time.

29. Defendant Hendricks filed the application that resulted in the '592 Registration on February 12, 2013. In that application, Hendricks claimed the "first use in commerce" of the applied-for "RIZE" mark was "at least as early as February 10, 2012." In connection with his application, Hendricks filed a specimen photograph that he alleged "show[s] the mark on actual goods and packaging for sale to the public in a store." *See* Exhibit 3.

30. On his Facebook page, however, Hendricks publicized the date of his first sale as being over four months later, on June 12, 2012:



31. In the ensuing years, Hendricks sought to publicize his two flavors of RIZE branded health supplement drinks – Apple Pear and Mango. However, by at least March 8, 2019, Hendricks' website listed the Mango flavor as "Sold Out" and unavailable for purchase:







# CITRUS MANGO (24 CAN CASE ONLY)

**Sold Out**

**NOTIFY ME WHEN THIS PRODUCT IS AVAILABLE:**

Enter your email address...

SEND

*(https://web.archive.org/web/20190308042610/https://rizeperformance.com/products/citrus-mango)*

32.    No subsequent capture of Hendricks' website available at <u>web.archive.org</u> depicts the Mango flavor as available for purchase, nor does Hendricks' current website. *See* Exhibit. 4.

33.    On March 8, 2019, Hendricks' website also signaled dwindling inventory of the Apple Pear flavor, stating that "THESE CANS ARE ABOUT TO EXPIRE! … The expiration date on these cans are just a month or so away …"





Sale

# APPLE PEAR (24 CAN CASE ONLY)

$25.99 $48.00

You Save 45% ($22.01)

## BLOW OUT SALE! THESE CANS ARE ABOUT TO EXPIRE! PLEASE READ!

The expiration date on these cans are just a month or so away so we need to get rid of them ASAP. The cans, like most other caned items are still good a LONG time after the official expiration date. If you want a great deal buy them while they last! We are dropping the price on these last cans from $48.00 to $25.00 to move them out FAST.

34.    No subsequent capture of Hendricks' website available at web.archive.org indicates a fresh supply of the Apple Pear flavor available for purchase.   Today, Hendricks' website identifies the Apple Pear flavor is "Sold Out."  *See* Exhibit 4.

35.    Hendricks' RIZE product was, prior to its discontinuation, labeled and marketed as a "dietary supplement" and sold in specialty health food stores and intended specifically for an extremely niche market consisting of endurance athletes.   For example, the product apparently contained an invented compound with the coined name "Trehalose," which the Rize website

claimed "induces the breakdown the abnormal protein accumulations in the brain via a process called autophagy[.]"

**C.    Communications Between Hendricks and Rise Brewing**

36.    Prior to filing suit against PepsiCo this spring, Rise Brewing unsuccessfully attempted to resolve its dispute directly with PepsiCo.  In this context, PepsiCo raised the existence of Defendant Hendricks' RIZE mark and the '592 Registration.

37.    Following up on PepsiCo's correspondence, Rise Brewing's attorney initiated a discussion with Hendricks' attorney.  At that time, Defendant Hendricks had not filed a single document with the U.S. Trademark Office in connection with the '592 Registration since 2013.

38.    Sensing an opportunity to exploit the situation and to salvage a failed investment, Hendricks demanded $1.25 million for an assignment of his purported rights in the RIZE trademark, including those allegedly recognized by the '592 Registration.  Rise Brewing declined to engage further.

39.    As Rise Brewing's case against PepsiCo was nearing a hearing on Rise Brewing's motion for a Preliminary Injunction, another of Defendant Hendricks' attorneys emailed Rise Brewing's attorneys of record in the PepsiCo case to allege infringement by Rise Brewing of Hendricks' '592 Registration and threaten a lawsuit seeking injunctive relief against Rise Brewing. *See* Exhibit 1.  Not missing another potential opportunity to cash in, the email invited a discussion before the complaint was filed.

40.    Hendricks' claims of infringement, however, are baseless because Hendricks abandoned, as a matter of law, any and all rights he may once have had in the RIZE trademark, the '592 Registration, and all of his other RIZE-formative registrations.

41. Nevertheless, after being contacted by Rise Brewing's lawyer, Hendricks scrambled to keep his '592 Registration from being cancelled by the Trademark Office, which requires that sworn declarations that a mark is still in use for the registered goods and services be submitted periodically.

42. On April 13, 2021, Defendant Hendricks' attorney Teresa Hendricks filed a "Declaration of Use" referencing an alleged screenshot of Hendricks' website. Despite Ms. Hendricks alleging that the screenshot had a January 13, 2021 "date of access," the document itself contains a time stamp of April 13, 2021 at 5:10pm, which was 23 minutes before the submission was made. *See* Exhibit 5. The submitted screenshot does not indicate whether any beverage bearing a "RIZE" mark was actually available for purchase by a consumer. Indeed, Hendricks' website currently indicates that all beverages bearing a "RIZE" mark shown on the website are "Sold Out." *See* Exhibit 4.

43. On information and belief, the sworn Declaration of Use was false, as at the time it was filed, the RIZE mark was not in use in commerce on or in connection with all of the goods listed in the '592 Registration.

44. Hendricks continued the charade on June 3, 2021 when he had his attorney Ms. Hendricks submit a "Statement of Incontestability" to the U.S. Trademark Office which stated, in part, that Hendricks "is still using the mark in commerce on or in connection with all goods or services listed in the existing registration for this class: Non-alcoholic beverages, namely, carbonated beverages." *See* Exhibit 6.

45. This statement, submitted under oath, was also false. On information and belief, on April 13, 2021 and thereafter, and for some time prior, there was no bona fide use in commerce of Hendricks' RIZE mark for the goods listed in the '592 Registration in the United States. Put

14

simply, at the time of the filings noted above, none of Hendricks' RIZE brand beverage products were available for purchase in the United States.

46.     These false representations were material to the continued registrability of the mark in that, but for the false representations, the registration would have been cancelled.

47.     Hendricks' knew of the falsity of the representations at the time they were made to the U.S. Trademark Office.

48.     Hendricks' false representations were made with the intent to deceive the U.S. Trademark Office into believing the RIZE mark was valid and subsisting, when in fact the mark had been abandoned, causing the U.S. Trademark Office to approve the aforementioned filings and maintain the '592 Registration as "live" on the federal trademark register.

49.     Despite Hendricks' allegations to the contrary, Rise Brewing is not and has not infringed a valid trademark registration of Hendricks.

50.     Hendricks' '592 Registration was abandoned, is not valid, was improperly kept alive by fraudulent filings with the U.S. Trademark Office, and should be cancelled.

## COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND CANCELLATION OF REGISTRATION (ABANDONMENT)

51.     Plaintiff hereby restates and re-alleges the allegations set forth in the preceding paragraphs and incorporates them by reference as if fully set forth herein.

52.     There is an actual, substantial, and justiciable controversy between Plaintiff and Defendant based on the foregoing and concerning the non-infringement of Plaintiff's RISE Marks and RISE-branded products with respect to Defendant's '592 Registration.

53.     As described more fully above, Defendant abandoned the "RIZE" mark by ceasing its use in commerce in the United States without the intent to resume use.

54. Accordingly, for at least the reason that Defendant has no valid right to the mark "RIZE," whether in common law or by virtue of the '592 Registration, Plaintiff is not liable for infringement thereof.

55. Therefore, pursuant to 28 U.S.C. §§ 2201-02, Plaintiff is entitled to a judgment declaring that there is no infringement by Plaintiff of a valid trademark held by Defendant, including the "RIZE" mark.

56. Moreover, because the RIZE mark has been abandoned as a matter of law, Plaintiff is entitled to a judgment declaring that the '592 Registration should be cancelled pursuant to 15 U.S.C. § 1119.

## COUNT II – DECLARATORY JUDGMENT OF FRAUD ON THE U.S. TRADEMARK OFFICE AND CANCELLATION OF FRAUDULENT REGISTRATION - (15 U.S.C. §§ 1064(3) and 1119)

57. Plaintiff hereby restates and re-alleges the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

58. Defendant made a false representation to the U.S. Trademark Office in its April 13, 2021 submission of a "Declaration of Use" in connection with the '592 Registration in stating that "the mark is in use in commerce on or in connection with all goods/services … listed in the existing registration for this specific class: Non-alcoholic beverages, namely, carbonated beverages."

    a. This statement was false for at least the reason that the mark was not then in use in commerce on or in connection with all of the stated goods for at least the reason that no products bearing the mark were available for purchase on that date.

    b. This false statement was material to the registrability and renewal of the mark. Without the false statement having been made, Defendant's registration would have been cancelled.

c.  Defendant knew that the statement was false at the time that it was made.

d.  Defendant made the false statement with the intent to deceive the U.S. Trademark Office.

59.  Defendant made a false representation to the U.S. Trademark Office in connection with its April 13, 2021 submission of a "Declaration of Use" in connection with the '592 Registration in submitting therewith a screenshot of a webpage that Defendant stated "show[s] the mark as used in commerce on or in connection with any item in this class."

a.  This statement was false for at least the reason that the website that was depicted in the submitted screenshot did not offer for purchase any products bearing the mark, nor were any products available for purchase via any other means at the time the screenshot was taken.

b.  This false statement was material to the registrability and renewal of the mark. Without the false statement having been made, Defendant's registration would have been cancelled.

c.  Defendant knew that the statement was false at the time that it was made.

d.  Defendant made the false statement with the intent to deceive the U.S. Trademark Office.

60.  Defendant made a false representation to the U.S. Trademark Office in connection with its June 3, 2021 submission of a "Declaration of Incontestability" in connection with the '592 Registration in stating that Defendant "is still using the mark in commerce on or in connection with all goods or services listed in the existing registration for this class: Non-alcoholic beverages, namely, carbonated beverages." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) ("Any false statements made in an incontestability affidavit may jeopardize not only the

incontestability claim, but also the underlying registration. … In particular, filing a fraudulent incontestability affidavit provides a basis for canceling the registration itself.") (citations omitted).

    a.   This statement was false for at least the reason that the mark was not then in use in commerce on or in connection with all of the stated goods for at least the reason that no products bearing the mark were available for purchase on that date.

    b.   This false statement was material. Without the false statement having been made, Defendant's registration could not claim to be incontestable.

    c.   Defendant knew that the statement was false at the time that it was made.

    d.   Defendant made the false statement with the intent to deceive the U.S. Trademark Office.

61.    Each of the aforementioned false representations is grounds for cancellation of the '592 Registration under 15 U.S.C. § 1064(3), which may be ordered pursuant to 15 U.S.C. § 1119.

## COUNT III – DECLARATION OF NON-INFRINGEMENT – NO LIKELIHOOD OF CONFUSION

62.    Plaintiff hereby restates and re-alleges the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

63.    To the extent Defendant owns any protectable rights in the RIZE mark, which it does not, Plaintiff's products do not infringe that mark, as consumers are not likely to be confused into believing that Plaintiff's products are associate or affiliated with, sponsored or endorsed by, or in any other manner connected with Defendant's products, or vice versa.

64.    Moreover, to the extent any such confusion is likely, it is Defendant that is infringing Plaintiff's rights in its marks by virtue of Plaintiff's senior rights. Notably, two of Rise Brewing's federal registrations—U.S. Reg. No. 4,396,118 for RISE & GRIND and U.S. Reg. No.

3,253,782 for RISE-N-SHINE BLEND—predate Defendant Hendricks' stated first use date for the RIZE mark set forth in the '592 Registration by several years.

65.     Accordingly, Plaintiff is entitled to a declaratory judgment of non-infringement because there is no likelihood of confusion between the parties or their respective products.

**COUNT IV – FALSE OR FRAUDULENT REGISTRATION -**
**(15 U.S.C. § 1120)**

66.     Plaintiff hereby restates and re-alleges the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

67.     Each of the aforementioned false representations contributed to and resulted in Defendant procuring and maintaining the '592 Registration such that Defendant is liable for damages sustained in consequence thereof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.  For judgment that:

1.  Plaintiff has not engaged in Federal Trademark Infringement or Unfair Competition in violation of the Lanham Act (15 U.S.C. §§ 1114, 1125);

2.  Plaintiff has not engaged in Trademark Infringement or Unfair Competition in violation of the common law;

3.  Defendant has submitted fraudulent representations to the U.S. Trademark Office that are grounds for cancellation of the '592 Registration;

4.  Defendant has abandoned the "RIZE" mark; and

5.  Defendant is liable for damages sustained as a consequence of his false and fraudulent representations made to the U.S. Trademark Office in connection with the '592 Registration.

B. An order:

1. Directing the U.S. Trademark Office, under 15 U.S.C. § 1119, to cancel the '592 Registration;

2. Awarding Plaintiff its damages, pursuant to 15 U.S.C. § 1120, sustained as a consequence of Defendant's false and fraudulent representations to the U.S. Trademark Office in connection with the '592 Registration;

3. This is an "exceptional case" under the Lanham Act 15 U.S.C. § 1117, and awarding Plaintiff its damages, attorneys' fees, and costs to the fullest extent provided for by the United States statute and the statutes and common law of North Carolina, including exemplary and punitive damages;

4. Awarding Plaintiff its pre-judgment and post-judgment interest; and

5. Awarding Plaintiff such other and further relief as this Court deems just and equitable.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated:  August 20, 2021

Respectfully Submitted,

By:     *s/ S. Benjamin Pleune*
        S. Benjamin Pleune
        Ben.Pleune@alston.com
        101 South Tryon Street, Suite 4000
        Charlotte, NC 28280-4000
        Tel. (704)444-1000
        Fax. (704)444-1111

        Paul Tanck (PHV to Be Filed)
        Paul.Tanck@alston.com
        Neal J. McLaughlin (PHV to Be Filed)
        Neal.mclaughlin@alston.com
        ALSTON & BIRD LLP
        90 Park Ave
        New York, NY 10016
        Tel. (212) 210-9400
        Fax. (212) 210-9444

        Jason Rosenberg (PHV to Be Filed)
        Jason.Rosenberg@alston.com
        Holly Hawkins Saporito (PHV To Be Filed)
        Holly.Saporito@alston.com
        ALSTON & BIRD LLP
        1201 W. Peachtree Street
        Atlanta, GA 30309
        Tel. (404) 881-7000
        Fax. (404) 881-7777

        *Attorneys for Plaintiff, RiseandShine*
        *Corporation d/b/a Rise Brewing*

21